**DETROIT EDISON CO. v. MAIN ISLAND CREEK COAL CO.**

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2137.

**Sales ⬅181(1)—Burden on seller to show delivery of coal impossible under contract.**

Under a contract for sale of 200,000 tons of coal of certain grades and prices, "less such amount as the seller is unable to ship or deliver on account of strikes, lockouts, labor agitations, accidents, car shortage, contingencies of transportation or navigation, action of any governmental agencies, or any causes beyond the control of the seller," purchaser, suing for damages for failure to deliver part of the coal, was not required to aver or prove that the seller was not relieved by difficulties from delivery of the coal, but, on the contrary, seller was affirmatively required to set up and establish the same by proof, if it desired to avail itself thereof.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Action by the Detroit Edison Company, a New York corporation, against the Main Island Creek Coal Company, a West Virginia corporation. Judgment for defendant, and plaintiff brings error. Reversed, and new trial awarded.

James V. Oxtoby, of Detroit, Mich. (Ernest E. Winters, Jr., of Huntington, W. Va., and Oxtoby, Robison & Hull, of Detroit, Mich., on the brief), for plaintiff in error.

E. L. Hogsett and John H. Holt, both of Huntington, W. Va., for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. Plaintiff in error was plaintiff, and defendant in error defendant, in the District Court, and will hereinafter be referred to as plaintiff and defendant.

Plaintiff, a New York corporation, having its principal office in the city of New York, and lawfully doing business at Detroit, Mich., instituted a suit at law in assumpsit against the defendant, a corporation of the state of West Virginia, within the Southern judicial district of that state, to recover damages for an alleged breach of contract entered into on the 1st of June, 1919, whereby plaintiff purchased from defendant and defendant sold to plaintiff "200,000 tons of coal (of 2,000 pounds) straight mine run at $2.00, four mine run at $1.90, or nut and slack at $1.75, from Prockter mines or Main Island mines Nos. 1 to 22, inclusive, at shipper's option, less such amount as the seller is unable to ship or deliver on account of strikes, lockouts, labor agitations, accidents, car shortage, contingencies of transportation or navigation, action of any government agencies or any cause beyond the control of the seller"; price as above per ton of 2,000 pounds, f. o. b. cars at mines, " * * * as directed by buyer and in as nearly equal monthly installments as possible during a period beginning June 1, 1919, and ending May 31, 1920, subject to the above contingencies and causes." By stipulation of parties the monthly shipments to be made were agreed upon, viz.: During the first five months at the rate of 15,000 tons per month; the next six months at 18,333 tons per month; and for the last month 15,000 tons.

Plaintiff averred that the defendant did not comply with its contract, and furnish coal as contemplated, but failed to do so to the extent of 63,400 tons, to recover for which suit was brought; the plaintiff's claim being that it lost heavily by breach of the contract by the defendant, and that the measure of damages was the difference between the market price and the contract price at the time and place of delivery of the coal. Defendant appeared, demurred to the declaration, which the court overruled, and thereupon pleaded non assumpsit, upon which issue was joined.

Plaintiff's testimony established the monthly shortage of coal shipped for each month during the existence of the contract, except for the first, second, and seventh months thereof, aggregating 63,400 tons, and sought to establish by proof the market price at the place of delivery at the end of each month in which there was a shortage. Defendant introduced no testimony, and upon the conclusion of that of the plaintiff, moved to strike out the plaintiff's evidence, and to direct a verdict for the defendant, upon the ground and for the reason that plaintiff's evidence was not sufficient to sustain any verdict, and did not make out a case under the declaration. This motion the court sustained, the judge saying:

"Gentlemen of the Jury: The defendant has made a motion that the court direct a verdict for the defendant. This suit is dependent upon a contract dated the 1st day of June, 1919, which has been introduced in evidence, and without going into details, as we have too much other work to do, I have reached the conclusion to sustain the motion, believing that the plaintiff has not under the terms of this contract made such a case as should go to the jury. Therefore you will render a verdict for the defendant, which is the court's verdict, and not yours. You simply do this under the direction of the court, and the responsibility is mine, and not yours."

To this ruling of the court, plaintiff by counsel then and there excepted, giving its reasons as follows:

"(1) Plaintiff's evidence is sufficient to sustain a verdict and does make a case under the declaration. (2) The plaintiff has, under the terms of the contract sued upon, made such a case as should go to the jury."

The jury thereupon, under direction of the court, rendered a verdict in favor of the defendant, on which judgment was entered, and from which action the writ of error in this case was sued out.

Five assignments of error are made, which present in different forms the objections to the action of the court as above indicated; that is to say, in directing a verdict for the defendant, in striking out the plaintiff's evidence and directing a verdict because of the insufficiency of the evidence to sustain the same under the declaration, and in not submitting the case to the jury and to the charge of the court as herein recited.

These assignments primarily raise for our consideration the propriety of the court's action in withdrawing the case from the jury and in directing a verdict for the defendant. This involves incidentally the interpretation of the contract and whether the plaintiff had the right upon the pleadings and proofs to have the jury pass upon the issues of fact and assess the damages thereunder. The trial judge based his ruling upon the fact that the plaintiff under the terms of the contract had not made such a case as should go to the jury. We are favored with nothing from the defendant save that, without offering any testimony in its own behalf, it insisted that the plaintiff's proof was insufficient to warrant a verdict in its favor, and that the meaning of the contract sued on is that the same did not constitute a sale of any particular quantity of coal, but only such as the defendant was able to deliver within the meaning of the exempting clauses of the contract, and that these clauses constituted a condition precedent to the right of recovery, and imposed upon the plaintiff the obligation to prove the absence of such conditions as prevented the carrying out of the contract by the defendant, and as to the existence of which the latter had offered no testimony.

With these contentions we cannot agree, as they seek to relieve the defendant virtually from the obligations of its contract, and to place upon plaintiff the burden of making out the defendant's defense. The meaning of this contract in our view is clear and free from ambiguity, and needs no special interpretation by the court to ascertain what its intendment is. It provides in terms for the sale by the seller and purchase by the buyer of 200,000 tons of coal, specifying the grade, price, and time and place of delivery, and the clause, "less such amount

as the seller is unable to ship or deliver on account of strikes, lockouts, labor agitations, accidents, car shortage, contingencies of transportation or navigation, action of any governmental agencies, or any causes beyond the control of the seller," is but the ordinary exempting provision usually inserted in contracts of the character under consideration, whereby sellers endeavor to protect themselves from failure to deliver from causes beyond their control. The object of this provision is not to enable a vendor to avoid his contract by failure to furnish and deliver what he had agreed to sell, but that in such instances as those specified, in which he may have been prevented from doing so by causes beyond his control, to permit him to plead and establish by appropriate proof the difficulties in which he was placed, and in a proper case to relieve him from carrying out the contract.

The plaintiff was not required to aver or prove these grounds of defense to be interposed by the seller. On the contrary, the defendant was affirmatively required to set up and establish the same by proof, if it desired to avail itself thereof. This seems too clear to need citation of authority, but the following cases are referred to, and fully sustain this view; 21 R. C. L. p. 462; Consolidated Coal Co. v. Peninsular Portland Cement Co. (C. C. A. 6th Cir.) 272 Fed. 625; Acme Manfg. Co. v. Arminius Chemical Co. (C. C. A. 4th Cir.) 264 Fed. 27; Atlantic Steel Co. v. R. O. Campbell Coal Co. (D. C.) 262 Fed. 555; American Fuel Co. v. Interstate Fuel Agency (C. C. A. 9th Cir.) 261 Fed. 120; Jessup & Moore Paper Co. v. Piper (C. C.) 133 Fed. 108; Cottrell & Son v. Smokeless Fuel Co. (C. C. A. 4th Cir.) 148 Fed. 595, 78 C. C. A. 366, 9 L. R. A. (N. S.) 1187; McKeefrey v. Connellsville Coke & Iron Co. (C. C. A. 3d Cir.) 56 Fed. 212, 5 C. C. A. 482; Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 326, 83 N. E. 851; Eaton v. Crowe Coal & Mining Co., 161 Mo. App. 30, 142 S. W. 1107; Metropolitan Coal Co. v. Billings, 202 Mass. 457, 89 N. E. 115; Garfield & Proctor Coal Co. v. Pennsylvania Coal & Coke Co., 199 Mass. 22, 84 N. E. 1020; Oakman v. Boyce, 100 Mass. 477. The last named cases from Massachusetts, as do several of the others, bear especially upon the fact that the claim under exempting clauses is one treated as a condition subsequent, which the party claiming the benefit of must plead and prove.

Under the view taken by the court of this contract, it would hardly seem necessary to do more than pass upon the propriety of the court's withdrawing the case from the jury, as a new trial will follow from our conclusion, and we therefore deem it best not to go into a discussion of the testimony adduced, further than to say that it seems entirely clear to us that the case should not have been taken from the jury. There is no dispute as to the existence of the contract. It had in large measure been executed, and the extent to which it had not been is equally clear, as is the basis upon which the measure of damages for its breach should be ascertained. Grand Tower Mining, etc., Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71; Brevard Tannin Co. v. J. F. Mosser Co. (C. C. A. 4th Cir.) 288 Fed. 725; 24 R. C. L. § 335; 35 Cyc. pp. 640, 641, title "Sales." Two witnesses were examined by the plaintiff, experienced in the purchase and sale of coal in this section at the time, who testified at considerable length as to the market value of coal, form-

ing the basis of the right of the plaintiff's recovery for the alleged loss from nondelivery of the coal contracted for, and from which testimony the jury could doubtless have reached a conclusion as to the amount, if any, to which the plaintiff was entitled.

The judgment of the District Court will be reversed, and a new trial awarded in accordance with the views herein expressed.

Reversed.